IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT J. MASTRELLA,** : | CIVIL ACTION NO. 1:20-CV-1135 |
| : | |
| **Plaintiff** : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **LOUIS DEJOY, POSTMASTER** : | |
| **GENERAL, UNITED STATES** : | |
| **POSTAL SERVICE,** : | |
| : | |
| **Defendant** : | |

# MEMORANDUM

Plaintiff Robert J. Mastrella brings three disability discrimination claims against his former employer, the United States Postal Service, under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*. Defendant Louis DeJoy is Postmaster General of the United States Postal Service.[1] Before the court is DeJoy's motion to dismiss Mastrella's amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. We will grant in part and deny in part DeJoy's motion to dismiss.

I.  **Factual Background & Procedural History**

   A.  **Factual Background**

Mastrella was an employee of the United States Postal Service ("the Postal Service") between January 7, 1995, and his retirement on September 27, 2020. (*See*

---

[1] Mastrella does not specify whether he is suing DeJoy in his personal or official capacity. Given the nature of the allegations, we assume DeJoy is being sued in his official capacity and proceed accordingly. We will refer to both DeJoy and the United States Postal Service as "the Postal Service" given their linked identities.

Doc. 22 ¶¶ 11, 28).  After the Postal Service hired Mastrella but before the beginning of the events relevant to this action, the Postal Service promoted Mastrella to "Manager, Maintenance Operations" ("MMO") at the Postal Service's Harrisburg Processing and Distribution Center.[2]  (Id. ¶ 11, Ex. C).  Ostensibly as the result of his military service, Mastrella suffers from "disc and nerve loss in both legs, degenerative disc disease, osteoarthritis, sciatic inflammation, and pain."  (Id. ¶ 10).  These conditions were first diagnosed in 1989, and they are permanent.  (Id.)  As set forth in the amended complaint, Mastrella's physical impairments constitute a disability within the ambit of the Rehabilitation Act.  (Id.)

Over the last decade, Mastrella and the Postal Service engaged in a series of disputes over the Postal Service's handling of Mastrella's disability.  In total, Mastrella has filed three federal lawsuits against the Postal Service.  The first suit arose out of an Equal Employment Opportunity ("EEO") Complaint of Discrimination in the Postal Service filed by Mastrella on March 29, 2013, against his supervisor, (see id. ¶ 13); thereafter, Mastrella filed a federal lawsuit in this judicial district, see Mastrella v. Donahoe, No. 1:14-CV-793, Doc. 1 (M.D. Pa. 2016).  The parties amicably resolved the matter, and the court issued an order of dismissal on June 20, 2016.  Id., Doc. 50 (M.D. Pa. June 20, 2016).  On June 28, 2018, Mastrella filed another EEO complaint claiming the Postal Service was discriminating against him by failing to raise his pay in compliance with its pay policies.  (See Doc. 22 ¶ 14).

---

[2] Although this term does not appear in the record, we understand the abbreviation "P&DC" as used in Mastrella's pleading to stand for "Processing and Distribution Center."

After failing to resolve the dispute at the administrative level, Mastrella filed his second lawsuit against the Postal Service on June 19, 2020.  The undersigned partially dismissed this second lawsuit with leave to amend by memorandum and order of today's date.  See Mastrella v. DeJoy, No. 1:20-CV-1037, Docs. 33-34 (M.D. Pa. Nov. 18, 2021).

The present lawsuit—Mastrella's third against the Postal Service—originates from events that took place in late 2018 and early 2019.  Mastrella alleges that in mid-December 2018, his supervisor, Marlon Williams, instructed him to work beyond his medical restrictions and ignored his subsequent request for an accommodation based on those restrictions.  (See Doc. 22 ¶¶ 16-17).  Mastrella sought the counsel of his treating physician, and on December 27, 2018, Mastrella provided the Postal Service with correspondence from his physician delineating his medical restrictions.  (See id., Ex. B; Doc. 28 at 15, 17).[3]  Among those restrictions is one limiting Mastrella to a maximum of six hours of work per day with no overtime.  (See Doc. 22, Ex. B).

---

[3] Mastrella filed a copy of his EEOC complaint with his brief in opposition to the motion to dismiss.  (See Doc. 28 at 11-19).  Courts are usually limited to considering the complaint's allegations, "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  The court can, however, consider "document[s] integral to or explicitly relied upon in the complaint."  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  The EEOC complaint is integral to Mastrella's complaint and explicitly referenced therein.  Its authenticity is not disputed.  We will therefore consider it.

Based on the new restrictions, Mastrella requested a reduction in his daily work schedule to six hours per day. (See id. ¶¶ 23, 52, Exs. C, D; Doc. 28 at 17). Mastrella alleges that Darrin Dunlap, a Maintenance Engineering Specialist, told Mastrella by phone that the Postal Service would not approve putting Mastrella on "light duty" (*i.e.*, a reduced work schedule) and ordered him not to come to work until the District Reasonable Accommodation Committee ("DRAC") resolved his accommodation request. (See Doc. 22 ¶¶ 54-55, Ex. C; Doc. 28 at 17). Mastrella protested this decision and asked Dunlap to speak with Human Resources. (See Doc. 28 at 17). Roughly twenty minutes later, Dunlap called Mastrella after speaking with Shawn White, the Human Resources Manager. (See id.) During this second call, Dunlap relayed that White decided Mastrella could continue coming to work while the DRAC considered his request, but that Mastrella would need to use FMLA leave to bring his work hours under the six-hour limitation. (See id.; Doc. 22, Ex. C). Mastrella did not want to take FMLA leave and requested to take two hours of "personal absence time" per day instead.[4] (See Doc. 22 ¶ 23; Doc. 28 at 17). Under Postal Service policy, personal absence time, when taken by a salaried

---

[4] As previously noted, a court deciding a Rule 12(b) motion may consider "document[s] integral to or explicitly relied upon in the complaint." Schmidt, 770 F.3d at 249 (quoting *In re* Burlington Coat Factory Sec. Litig., 114 F.3d at 1426). In his amended complaint and EEOC complaint, Mastrella refers several times to the Employee and Labor Relations Manual ("ELM"), the handbook that governs leave and other administrative matters within the Postal Service. (See Doc. 22 ¶¶ 60-61; Doc. 28 at 17-18). To better understand the context of his claim, we consulted the 45th edition of the ELM, which was in effect from September 2018 to March 2019, the period during which the Postal Service allegedly discriminated against Mastrella. See U.S. POSTAL SERV., EMPLOYEE AND LABOR RELATIONS MANUAL, (Sept. 2018), https://about.usps.com/manuals/elm/elm45.zip.

employee like an MMO, does not count against the employee's accumulated leave[5] nor require a corresponding deduction from their salary.  (See Doc. 22 ¶¶ 60-61, Ex. B); see also ELM § 519.1.  FMLA leave can be counted in different ways under the Postal Service's leave system, see ELM § 515.41, but, in contrast to personal absence time, all of those ways involve counting the hours missed against the employee's accumulated leave or the employee accepting a deduction in their salary.[6]  See ELM §§ 510-15, 519; (see also Doc. 22 ¶¶ 61, 67, Ex. B).

The ELM gives discretion to grant or deny requests for personal absence time to the employee's immediate supervisor.  (See Doc. 22 ¶ 63); ELM § 519.742.  At the time of the relevant events, Williams was Mastrella's supervisor.  (See Doc. 22 ¶ 64).  According to the amended complaint, White—not Williams—denied Mastrella's request to take two hours of personal absence time per day.  (See id.

---

[5] Postal Service employees accrue a certain number of hours of "annual leave" and "sick leave" every pay period.  See ELM §§ 512.311, 513.221.  These hours are credited to a leave account held by the employee.  See id. §§ 513.3, 513.221.  Unused leave carries over from one year to the next, albeit with some restrictions.  See id. §§ 513.221, 512.321.  Accumulated sick leave can be used to retire early.  See id. § 513.821.  Accumulated annual leave can be, under certain circumstances, exchanged for cash.  See id. §§ 512.633; 512.732.  We use the term "accumulated leave" to refer to both the annual leave and sick leave Mastrella amassed in his leave account over his career with the Postal Service.   For the sake of clarity, we note that the ELM uses "accumulated leave" in a more restrictive way, *i.e.*, to describe only the unused annual leave (not sick leave) credited to an employee's leave account at the end of each year.  See id. § 512.12.  ELM's more limited reference to accumulated leave bears no relation to the claims at issue.

[6] It is not clear whether the Postal Service charged Mastrella's leave to his accumulated leave, forced him to take leave without pay, or alternated between the two.  White's email dated December 28, 2018, implies that the Postal Service did not pay Mastrella during his leave.  (See Doc. 22, Ex. B).  That Mastrella eventually exhausted his accumulated leave implies the Postal Service charged his FMLA leave against accumulated leave.  (See id. ¶ 59).

5

¶¶ 62, 64, Ex. D).  White's rationale is allegedly set forth in an email from White to another Postal Service employee dated December 28, 2018:

> I told Darrin [Dunlap] that we cannot not let Robert [Mastrella] work.  We in turn will be paying him free money.  Also need to make sure he is entered for FMLA and does not get paid for a[n] 8 hour day if he is not working a[n] 8 hour day.

(See id., Ex. B).[7]

Mastrella submitted his request for light duty to the DRAC on December 28, 2018.  (Id., Ex. C).  Per Postal Service policy, the DRAC must hold an "interactive meeting" with applicants for accommodations within 30 days of receiving the request.  (See id. ¶¶ 44-46).  In Mastrella's case, the DRAC failed to schedule such a meeting until January 28, 2019, and only did so after Mastrella complained.  (See id. ¶ 47).  The DRAC ultimately denied Mastrella's request for light duty on March 18, 2019.  (See id. ¶ 49).

Over the following months, Mastrella regularly objected to the Postal Service's requirement that he take FMLA leave, and, in further protest, he submitted PS-3971 forms on a daily basis requesting permission to log two hours of personal absence time.  (See id. ¶¶ 63-65, Ex. D; Doc. 28 at 18-19).  Mastrella alleges his supervisor, Williams, altered the PS-3971 forms into requests for FMLA leave without Mastrella's permission.  (See Doc. 22 ¶ 65; Doc. 28 at 18-19).  Eventually,

---

[7] Mastrella misquotes this email in the amended complaint.  (See Doc. 22 ¶ 54 ("As an example, Ms. Shawn White, United States Postal Service's Human Resource Manager, stated "I told Darrin that we cannot let Robert [Mastrella] work.  We in turn will be paying him free money.")).  When an exhibit presented by a party contradicts the allegations made by that party, the exhibit controls.  Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 111-12 (3d Cir. 2018).

Mastrella exhausted his accumulated leave—a total of 451.54 hours. (See Doc. 22 ¶¶ 37, 59). According to the *allegata*, the Postal Service also treated Mastrella in a hostile manner following his accommodation request. For example, it required him to submit medical documents previously submitted, made him "chase [his] forms down and retrieve copies [him]self," and subjected him to excessive monitoring of his actions and work performance. (See id. ¶¶ 22, 27; Doc. 28 at 18-19). As a result of the Postal Service's refusal to accommodate his disability, refusal to authorize personal leave, and allegedly harassing behavior, Mastrella was "forced" to take disability retirement on September 27, 2020. (See Doc. 22 ¶¶ 27-28). Nondisabled employees, Mastrella alleges, were not subject to this same treatment, not "forced" to take disability retirement, nor forced to exhaust their accumulated leave. (See id. ¶¶ 22, 38; see also Doc. 28 at 17-18).

    **B.**    **Procedural History**

Mastrella filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") on February 11, 2019. (See Doc. 22 ¶ 8). Mastrella filed the present lawsuit on July 3, 2020, and filed an amended complaint on February 1, 2021. The Postal Service moves to dismiss Mastrella's amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failure to state a claim. This motion is fully briefed and ripe for disposition.

**II.**    **Legal Standards**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.

FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

8

U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

The Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 791 *et seq.*, takes the protections against discrimination afforded individuals with disabilities by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and applies them to the federal government and entities that receive funding from the federal government. See Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Specifically, the Rehab Act "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement." Id. (quoting Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996)). It also provides that a "qualified individual with a disability" cannot "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). The pleading requirements under the Rehab Act are identical to those under the ADA. See McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 95 (3d Cir. 1995).

To make out a claim of discrimination under the Rehab Act, a plaintiff must establish that (1) he is disabled within the meaning of the Rehab Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; and (3) he suffered an adverse employment action as a result of discrimination. See

Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021) (citing Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010)).  The burden of establishing a *prima facie* case "is not onerous," see Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981), and presents a "low bar" for employment-discrimination plaintiffs, see Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006).

      Mastrella's amended complaint is somewhat confusing.  The court interprets Mastrella's pleading as making three distinct discrimination claims against his former employer under the Rehab Act related to three adverse employment actions.  Mastrella claims he was subject to a discriminatory adverse employment action when he was constructively discharged in September 2020 (Count I); when the Postal Service failed to reasonably accommodate his disability by refusing to reduce his workday from eight hours to six hours, *i.e.*, "light duty" (Count II); and when the Postal Service failed to reasonably accommodate him by refusing to allow him to

take two hours of personal absence time per day (Count III).[8] The Postal Service moves to dismiss all three counts under Rule 12(b)(6) for failure to state a claim.[9]

### A.  Count I: Constructive Discharge

The Postal Service mounts two attacks on Mastrella's claim that his disability retirement on September 27, 2020, constituted constructive discharge.  The Postal Service asserts, *first*, that Mastrella did not exhaust available administrative remedies before bringing his claim in federal court and, *second*, assuming *arguendo* Mastrella's claim was properly exhausted, that he failed to plead sufficient facts to sustain a constructive discharge claim.  (See Doc. 27 at 8-11).  We agree that the claim is not properly exhausted, so we need not reach the Postal Service's second argument.

A potential plaintiff under the Rehab Act must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).  The Postal Service suggests the United States Supreme Court's holding in Green v. Brennan, 578 U.S. 547, 136 S. Ct. 1769 (2016), prohibits

---

[8] Mastrella makes a passing reference to the Postal Service's failure to engage in a good-faith "interactive process" as required by the Rehab Act.  (See Doc. 22 ¶ 52); see also Colwell v. Rite Aid Corp., 602 F.3d 495, 506-7 (3d Cir. 2010) (providing overview of interactive-process claims).  Given the conclusory nature of Mastrella's assertion, the lack of supporting facts, and Mastrella's failure to argue an interactive-process claim in his Rule 12(b)(6) opposition brief, we do not read Mastrella's complaint to include such a claim.

[9] The failure to file a timely charge with the EEOC does not implicate a district court's subject-matter jurisdiction but is instead grounds for dismissal under Rule 12(b)(6).  See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); see also Simko v. U.S. Steel Corp, 992 F.3d 198, 204 n.5 (3d Cir. 2021).  We will accordingly construe the Postal Service's Rule 12(b)(1) motion as a Rule 12(b)(6) motion.

inclusion of Mastrella's constructive-discharge claim in this lawsuit because his contact with the EEO counselor predated his retirement by more than a year and a half. (See Doc. 27 at 8-9). In Green, the Supreme Court held that a constructive discharge claim "does not exist until the employee resigns." See Green, 136 S. Ct. at 1781. Thus, according to the Postal Service, Mastrella has not yet exhausted his administrative remedies because he failed to initiate contact anew with an EEO counselor after his constructive discharge. (See Doc. 27 at 9).

In the Third Circuit, a subsequent employment discrimination claim does not need to be exhausted when the acts alleged in the subsequent claim are "fairly within the scope" of either (1) the prior EEOC complaint or (2) the investigation arising therefrom. Simko, 992 F.3d at 207 (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). This inquiry is "highly fact specific" and requires the court to "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case-basis before determining that a second complaint need not have been filed." Id. (quoting Robinson v. Dalton, 107 F.3d 1018, 1024 (3d Cir. 1997)). Because EEOC complaints are generally drafted by nonlawyers, courts must liberally construe the scope of the original charge. See Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978). Still, there must be a "close nexus" between the facts alleged in the administrative charge and any newly raised claim. See id. at 967; see also Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).

We interpret Green as holding constructive discharge is an event that happens at a discrete point in time. In that light, we cannot see how Mastrella's constructive discharge claim falls within his EEOC complaint or a reasonable

12

investigation of that complaint by the EEOC.  See Simko, 992 F.3d at 207.  Mastrella's alleged constructive discharge took place on September 27, 2020, (see Doc. 22 ¶ 28), nearly 600 days after he filed the EEOC complaint, (see id. ¶ 8); more than four months after he withdrew his complaint from the EEOC on May 19, 2020, (see id.); and more than two months after he filed his original complaint with this court on July 3, 2020, (see Doc. 1).

Mastrella responds cursorily that the alleged "harassment" in February 2019 is the same type of "harassment" that led him to retire in September 2020, (see Doc. 28 at 8-9), but he fails to identify any legal authority to support his view that this assertion alone satisfies the exhaustion requirement.  He alleges no facts to create the requisite link between his new claim and the administrative proceeding.  Nor does he endeavor to answer the central question raised by the Postal Service, which is how an adverse action that occurred 19 months after the EEOC complaint was filed and four months after the EEOC proceeding concluded could be considered "fairly within the scope" of either.  See Simko, 992 F.3d at 207.  Under the circumstances, we are constrained to find that Mastrella's constructive-discharge claim is not encompassed in his original EEOC complaint.  We will thus dismiss Mastrella's claim for failure to exhaust administrative remedies.

**B.      Counts II and III: Failure to Accommodate**

The Rehab Act protects against discriminatory employment actions such as termination or failure to hire, as well as failure to reasonably accommodate an individual's disability.  See 42 U.S.C. § 12112(b)(5)(A)-(B).  The elements of a failure-to-accommodate claim are identical to those of a discrimination claim, including the

requirement of an adverse employment action.  See Hohider v. UPS, Inc., 574 F.3d 169, 186-88 (3d Cir. 2009).  An employer's refusal to make reasonable accommodations for an employee's disabilities or failure to engage in "reasonable efforts to assist the employee and to communicate with the employee in good faith" both constitute adverse employment actions.  See Colwell, 602 F.3d at 504 (citation omitted).

        **1.** *Six-Hour Workday*

Mastrella contends that the Postal Service discriminated against him when it refused to grant his request for a reduced six-hour workday.  The Postal Service does not contest that Mastrella is disabled nor that he could have continued to perform his job with a reasonable accommodation.  (See Doc. 27 at 7-8).  Instead, the Postal Service argues Mastrella failed to sufficiently allege a discriminatory basis for the decision not to accommodate him.  (See id. at 8).

The Postal Service's argument overlooks the difference between a failure-to-accommodate claim and a direct-discrimination claim.  Direct-discrimination claims require discriminatory motive, but failure-to-accommodate claims do not.  Muhammad v. Ct. of Common Pleas of Allegheny Cnty., 483 F. App'x 759, 764 (3d Cir. 2012) (nonprecedential)[10]; Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1262-63 (11th Cir. 2007) (describing the difference between the two kinds of disability claims).  The mere failure to make a reasonable accommodation to the "known

---

    [10] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

14

physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" is enough to violate the Rehab Act unless the Postal Service "can demonstrate that the accommodation would impose an undue hardship." See 42 U.S.C. § 12112(b)(5)(A); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999). An allegation or inference of discriminatory intent is simply not required to state a *prima facie* case. See, e.g., Muhammad, 483 F. App'x at 764 (citing Good Sheperd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 561-62 (7th Cir. 2003)); Sharbaugh v. W. Haven Manor, LP, No. CV 14-1723, 2016 WL 6834613, at *7 (W.D. Pa. Nov. 21, 2016) (citing Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999)); Bielich v. Johnson & Johnson, Inc., 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014) (same). We will therefore deny the Postal Service's motion to dismiss Mastrella's discrimination claim founded on the failure to accommodate him with a six-hour workday.

### 2. *Personal Absence Time*

As previously noted, Mastrella claims the Postal Service discriminated against him when it refused to let him use "personal absence time"—which is paid leave that does not count against his accumulated leave—to reduce his workday to six hours and instead required him to take FMLA leave. (See Doc. 22 ¶¶ 59-61). Mastrella alleges this constituted a failure to accommodate his disability and ultimately required him to deplete all 451.54 hours of his accumulated leave. (See id. ¶¶ 59, 67). The Postal Service argues that the decision to deny Mastrella his accommodation was not formalized until the DRAC denied his request on March 18, 2019, approximately a month after Mastrella filed his EEOC complaint.

15

Accordingly, this failure to accommodate claim was never administratively exhausted in proceedings before the EEOC and is now time barred. (See Doc. 27 at 11-14).

We are not persuaded by the defendant's argument. White and Dunlap, both managers in the Harrisburg facility, denied Mastrella's request *before* he filed his EEOC complaint. (See Doc. 22 ¶¶ 54-55, 62, Exs. C, D). But even if no adverse action occurred until March 18, we would still need to inquire whether the subsequent failure-to-accommodate claim falls "fairly within the scope" of Mastrella's prior EEOC complaint or the investigation arising therefrom. See Simko, 992 F.3d at 207. It clearly does. Even a cursory reading of the personal statement attached to the EEOC complaint reveals Mastrella's grievance was the kind of leave the Postal Service compelled him to take in lieu of personal absence time. Mastrella references leave requirements repeatedly in his personal statement. (See Doc. 28 at 15-19). Among the desired remedies, he lists "change all leave pertaining to my restriction to admin leave & reset balance for sick & annual." (See id. at 11). He complains that his leave requests are being altered without his permission and in contravention of the Postal Service's policies. (See id. at 18). And he describes being granted personal absence time on a daily basis in the past to accommodate his medical issues and asks, "Why was this allowed in the past but not now?" (See id.)

The Postal Service's allegedly unfair treatment of Mastrella's leave requests is not merely encompassed within the scope of the February 11, 2019 EEOC complaint; it is the primary basis for his EEOC complaint. See Simko, 992 F.3d at

16

207. Mastrella has sufficiently exhausted his failure-to-accommodate claim grounded in the Postal Service's refusal to grant him personal absence time. We will deny the Postal Service's motion to dismiss this claim.

## IV. Conclusion

We will grant in part and deny in part DeJoy's motion (Doc. 26) to dismiss Mastrella's amended complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: November 18, 2021