**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT J. MASTRELLA,** | : | **CIVIL ACTION NO. 1:20-CV-1135** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LOUIS DEJOY, POSTMASTER** | : | |
| **GENERAL, UNITED STATES** | : | |
| **POSTAL SERVICE,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiff Robert J. Mastrella filed this action against his former employer, the United States Postal Service, alleging disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* Defendant Louis DeJoy, United States Postmaster General, moves for summary judgment on Mastrella's remaining failure-to-accommodate claims. We will grant the motion.

**I.    Factual Background & Procedural History**[1]

Mastrella began employment with the Postal Service in 1995. (See Doc. 61 ¶ 1). At all times relevant to this litigation, the Postal Service employed Mastrella as

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements. (See Docs. 61, 65). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, we cite directly to the statements of material facts.

a "Manager, Maintenance Operations" ("MMO") at the Processing and Distribution Center in Harrisburg, Pennsylvania ("Harrisburg Center" or "Center"). (<u>See id.</u>) The Postal Service classified Mastrella as an "EAS" and "exempt" employee. (<u>See id.</u> ¶¶ 22, 44; Doc. 61-3, Williams Dep. 6:4-7, 7:3-5). EAS employees are paid a salary (not hourly wages), and exempt employees are not required to clock in or out for their shifts. (<u>See</u> Williams Dep. 6:8-7:15). The Postal Service nevertheless expects all employees, including salaried and exempt employees like Mastrella, to work eight hours per day and to use leave to make up any unworked hours. (<u>See</u> Doc. 61 ¶¶ 24-25, 29, 31; <u>see also</u> Williams Dep. 8:7-8, 36:17-18).

Mastrella suffers from several health issues which limit his ability to stand and to perform manual labor, most notably back problems. (<u>See</u> Doc. 61 ¶¶ 2-3). To accommodate these limitations, the Postal Service relieved Mastrella of his official duties as an MMO and assigned him to serve indefinitely as the "district coordinator" for a custodial project. (<u>See id.</u> ¶¶ 8, 14). This role did not require manual labor and was more amenable to Mastrella's physical limitations. (<u>See id.</u> ¶¶ 11-13; Doc. 61-1, Mastrella Dep. 48:9-49:5, 55:13-56:24). The assignment, however, was not a permanent position within the Postal Service's employment framework and carried with it the same expectation Mastrella would work eight hours per day. (<u>See</u> Doc. 61 ¶¶ 9-10, 15, 17).

In December 2018, Mastrella provided the Postal Service with a letter from his doctor asserting Mastrella, *inter alia*, could no longer work more than six hours per day. (<u>See</u> Mastrella Dep. 117:3-6, 117:14-20, 118:21-119:3; Doc. 61 ¶ 18; Doc. 61-2

¶ 7;[2] Doc. 61-4 at 4).  Mastrella asked the Postal Service to decrease the number of

daily hours he was expected to work from eight to six in conformity with his

doctor's instructions.  (See Mastrella Dep. 112:22-25, 120:23-121:2, 134:22-135:3; Doc.

61-4 at 5).  The record lacks detail regarding the immediate aftermath of Mastrella's

request, but Mastrella arrived at the understanding he needed to request leave from

his supervisor, Marlon Williams, to bring his daily hours down to six.  (See Mastrella

Dep. 112:16-21, 122:23-25; see also Doc. 61 ¶¶ 19, 21).

The Postal Service's leave policies are codified in the Employee and Labor

Relations Manual ("ELM").[3]  (See Doc. 61 ¶ 27).  Three kinds of leave available to

---

[2] Mastrella claims we cannot consider the declaration of Shawn White, the
Postal Service's Manager Human Resources for the Central Pennsylvania District,
because it was not disclosed during discovery.  (See, e.g., Doc. 65 ¶¶ 8-10).  Mastrella
is mistaken.  Courts routinely consider post-discovery declarations on summary
judgment when the declarant previously has been disclosed as a witness.  See, e.g.,
Fiumano v. Metro Diner Mgmt. LLC, No. 17-465, 2022 WL 2541354, at *4 n.4 (E.D.
Pa. July 7, 2022) (citing FED. R. CIV. P. 26(a)(1)(A)(ii)); Riemensnyder v. Paragon Sys.,
No. 3:20-CV-109, 2022 WL 1123187, at *3 (M.D. Pa. Apr. 14, 2022) (collecting cases).
White was disclosed and both parties participated in her deposition.  (See Doc. 61-6,
White Dep. 1:16-22).

[3] Mastrella summarily denies the Postal Service's statements of fact related to
the ELM on the ground the Postal Service failed to attach the cited ELM sections to
its motion.  (See, e.g., Doc. 65 ¶¶ 27-35).  The Postal Service represents this was an
inadvertent error and attaches the relevant sections to its reply brief.  (See Doc. 69
at 2-3; Doc. 69-1 at 97-101).  The Postal Service also links to the ELM in its
statement of facts.  (See Doc. 61 ¶ 34).  Given the Postal Service's corrective
measures and incorporation of the ELM its Rule 56.1 statement of facts, as well as
the parties' extensive reliance on the ELM throughout this litigation, see, e.g.,
Mastrella, 2021 WL 5396077, at *2 n.1, we find the Postal Service's statements to be
adequately supported by the record.  We will cite the ELM directly when it is
relevant, using the 45th Edition of the ELM which was the operative version during
the period relevant to this litigation.  See U.S. POSTAL SERV., EMPLOYEE AND LABOR
RELATIONS MANUAL, (Sept. 2018), https://about.usps.com/manuals/elm/elm45.zip.

salaried Postal employees are relevant to the matter *sub judice*: annual leave, sick leave, and personal leave.  Annual leave is essentially vacation time.  <u>See</u> ELM § 512.11.  Sick leave covers periods when an employee needs time off to address a personal or familial health issue.  <u>See id.</u> § 513.11-12.  Both types of leave are paid, and employees earn a certain number of hours of each per pay period.  (<u>See</u> Doc. 61 ¶¶ 19, 44-45).  These two kinds of leave accrue over time with some employees able to build up significant reserves.  (<u>See id.</u> ¶¶ 44-45).  When an employee exhausts their sick leave, they can use annual leave in its place or request unpaid leave.  <u>See</u> ELM § 513.61.  Postal employees can apply accumulated annual and sick leave toward early retirement or, under certain circumstances, exchange it for cash.  <u>See</u> <u>id.</u> §§ 512.633, 512.732, 513.821, 513.9.

Personal leave, sometimes called "personal absence time" or "administrative leave," is different.  (<u>See</u> Doc. 61 ¶¶ 28, 32; Mastrella Dep. 112:16-18, 136:22-23). Personal leave is a paid "partial day absence[]" granted on a discretionary basis by an employee's supervisor so the employee may attend to a personal matter like a doctor's appointment or sudden illness.  (<u>See</u> Doc. 61 ¶¶ 28-29, 47; Doc. 61-2 ¶ 15); <u>see also</u> ELM § 519.  Unlike annual or sick leave, personal leave does not count against an employee's accumulated leave.  (<u>See</u> Doc. 61 ¶¶ 28-29); <u>see also</u> ELM § 519.1.  There is also no cap on the amount of personal leave an employee may receive, but the ELM explains "[a] full-time exempt employee is expected to work a full day."  <u>See</u> ELM § 519.741; <u>see also</u> <u>id.</u> § 519.72; (Doc. 61 ¶¶ 29, 31).  Accordingly, supervisors "may disapprove personal leave requests when necessary to carry out their responsibility to control work hours" and ensure their department can fulfill

its duties.  (See Doc. 61 ¶¶ 30-31); ELM §§ 519.732, 519.741, 519.751.  When a supervisor disapproves a request for personal leave, the ELM authorizes the supervisor to convert the requested time off to a form of leave which counts against the employee's annual or sick leave.  (See Doc. 61 ¶ 32); ELM § 519.732.  All requests for leave, regardless of type, must be made in advance.  See ELM § 519.742.

Mastrella asked the Postal Service to grant him two hours of daily personal leave to bring his workday down to six hours, (see Mastrella Dep. 112:14-21, 123:22, 136:22-23), presumably because it would allow him to receive his full salary without depleting his accumulated leave.  Over the next several months Mastrella engaged in various interactions with different levels of the Postal Service regarding his accommodation request.  (See, e.g., Doc. 61 ¶¶ 36-40, 49; Doc. 61-4 at 1-16).  The end result of this process was the Postal Service denying Mastrella's request to take two hours of daily personal leave.  (See Doc. 62 at 5; Doc. 66 at 9; see also Doc. 61 ¶¶ 48-50).  Williams, however, was willing to allow Mastrella to consistently work six hours a day in his role as district coordinator so long as Mastrella used sick leave to cover the other two hours he was required to work.  (See Doc. 61 ¶ 53; Williams Dep. 36:20-25).  Mastrella continued as district coordinator for the custodial project, routinely requesting and receiving two hours of daily sick leave.  (See Mastrella Dep. 55:7-12, 136:16-137:1; see also, e.g., Doc. 61-4 at 23-50; Doc. 61-5).  Mastrella

retired on September 27, 2019, (see White Dep. 47:19-48:25; Doc. 65-1 at 75; see also

Mastrella Dep. 58:2-3),[4] apparently having exhausted his accumulated leave.

Mastrella filed suit against the Postal Service on July 3, 2020, alleging several

claims under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*  We partially

granted the Postal Service's motion to dismiss but found Mastrella plausibly pled

two failure-to-accommodate claims.  Following a period of discovery, the Postal

Service moved for summary judgment.  The motion is fully briefed and ripe for

disposition.

## II.  Legal Standard

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

proof tasks the nonmoving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief.  See Pappas v. City

of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp.

v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light

most favorable to the non[]moving party and draw all reasonable inferences in that

party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).

This evidence must be adequate, as a matter of law, to sustain a judgment in favor

---

[4] We referred to Mastrella as retiring on September 27, 2020, in our
memorandum addressing the Postal Service's motion to dismiss.  Mastrella's
amended complaint avers he retired on that date, and he repeats this assertion in
his opposition brief, but discovery has produced evidence Mastrella retired on
September 27, *2019*.  (See White Dep. 47:19-48:25; Doc. 65-1 at 75; see also Mastrella
Dep. 58:2-3).

of the nonmoving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.

See Pappas, 331 F. Supp. 2d at 315.

**III.**   **Discussion**

     Mastrella advances two claims against the Postal Service for disability

discrimination under the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 791

*et seq.*  The Rehab Act takes the protections against discrimination afforded

individuals with disabilities by the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101 *et seq.*, and applies them to the federal government and entities that

receive funding from the federal government.  See Wishkin v. Potter, 476 F.3d 180,

184 (3d Cir. 2007).  Specifically, the Rehab Act "forbids employers from

discriminating against persons with disabilities in matters of hiring, placement, or

advancement."  Id. (quoting Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996)).

It also provides a "qualified individual with a disability" cannot "be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance or under any

program or activity conducted by any Executive agency or by the United States

Postal Service."  29 U.S.C. § 794(a).  The Rehab Act employs the same liability

standards as the ADA.  See Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d

Cir. 2012) (citing McDonald v. Pa. Dep't of Pub. Welfare, 62 F.3d 92, 94-95 (3d Cir.

1995)).

Mastrella's two remaining claims under the Rehab Act are failure-to-accommodate claims.  To establish a *prima facie* claim for failure to accommodate, a plaintiff must adduce evidence that: (1) "the employer knew about the employee's disability," (2) "the employee requested accommodations or assistance," (3) "the employer did not make a good-faith effort to assist the employee," and (4) "the employee could have been reasonably accommodated."  See Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 772 (3d Cir. 2004)).  We read Mastrella's complaint as alleging the Postal Service failed to accommodate his disability when it refused to reduce his workday from eight hours to six hours and refused to allow him to take two hours of personal absence time per day.  See Mastrella v. DeJoy, No. 1:20-CV-1135, 2021 WL 5396077, at *5-7 (M.D. Pa. Nov. 18, 2021).  At the summary-judgment stage, Mastrella must support those allegations with facts in the record.  See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (citing Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109-10 (3d Cir. 1985)).  We will assess the evidence supporting these two claims *seriatim*.

**A.      Six-Hour Workday**

Mastrella makes clear in his deposition that his request for a six-hour workday was a request to reduce the number of hours the Postal Service expected him to work per day without taking any kind of leave or accepting any reduction in his renumeration.  He agreed the "crux" of his complaint was he "wanted to be paid eight hours of work but . . . wanted to work only six hours."  (See Mastrella Dep. 112:22-25; see also id. at 134:8-135:6 ("I should have been allowed to work the six

hours per my restriction and get my eight hours pay per Federal Law.")).  The Postal Service argues the record conclusively establishes Mastrella's requested accommodation was unreasonable because working a full eight-hour day is an essential function of his position as an MMO.  (See Doc. 62 at 8-9).

The record strongly supports the essential nature of the eight-hour workday. Williams states in his deposition that all employees of the Postal Service, including Mastrella, are required to work eight hours a day.  (See Williams Dep. 8:7-8, 29:25-30:2, 36:17-25).  According to Williams, employees who do not work the full eight hours are required to use some kind of leave to make up for the lost hours.  (See id. at 7:9-15; see also id. at 8:15-16).  White affirmed all employees with Mastrella's classification were required to work 40 hours a week.  (See White Dep. 29:23-30:1). Additionally, the ELM states "exempt" employees like Mastrella are required to work a full eight-hour day.  See ELM § 519.741, 519.72.

Mastrella insists the record does not substantiate the Postal Service's position, (see Doc. 66 at 9), but fails to cite any evidence creating a genuine dispute on this issue, see Berckeley, 455 F.3d at 201.  Mastrella himself admits during his deposition to being unaware of any MMO or other employee at the Harrisburg Center with only a six-hour workday expectation, (see Mastrella Dep. 122:9-17), and he acknowledges his inability to work eight hours a day makes him unable to perform the essential functions of the MMO position, (see id. at 48:23-24, 57:15-58:6). Mastrella has simply not met his burden to show a genuine dispute of fact exists as to whether Mastrella's accommodation request was reasonable.  We will grant the Postal Service's motion for summary judgment on this claim.

**B.      Personal Leave**

The Postal Service also argues Mastrella's request for two hours of personal leave per day was unreasonable.  (See Doc. 62 at 9-15).  Temporary leaves of absence are often a reasonable means of accommodating a disability, but requests for indefinite unpaid leave (let alone indefinite *paid* leave) are *per se* unreasonable. See Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 671 (3d Cir. 1999); Fogleman v. Greater Hazleton Health All., 122 F. App'x 581, 586 (3d Cir. 2004) (nonprecedential) (citations omitted); see also Moore v. CVS Rx Servs., Inc., 142 F. Supp. 3d 321, 338 (M.D. Pa. 2015) (collecting cases), aff'd, 660 F. App'x 149 (3d Cir. 2016) (nonprecedential); Brangman v. AstraZeneca, LP, 952 F. Supp. 2d 710, 723 (E.D. Pa. 2013) ("The ADA does not require employers to grant indefinite or open ended disability leave." (citing, *inter alia*, Fogleman, 122 F. App'x at 586)).

The Postal Service characterizes Mastrella's request for two hours of daily personal leave as a request for indefinite paid leave.  (See Doc. 62 at 10-13).  The record undisputedly supports this characterization: Mastrella never suggested any timeframe under which he might have been able to return to working a full eight hours.  See Fogleman, 122 F. App'x at 586 (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004)).  And Williams and White interpreted Mastrella's request as open ended at the time he made it.  (See Doc. 61-2 ¶¶ 7, 15; White Dep. 30:17-24, 31:6-9; Williams Dep. 28:20-22, 29:25-30:2, 33:7-13).  Mastrella's sole response is to assert the Postal Service's characterization of his request is flawed because it "overlooks . . . that at the time, he could, in fact, perform his [MMO] job requirements – with accommodations."  (See Doc. 66 at 9).  This

counterargument is both circular and unpersuasive.  The accommodation *is* the leave—whether the leave would allow Mastrella to do his job is irrelevant to the question of whether his need for leave is indefinite.  Without a meaningful effort by Mastrella to meet his summary-judgment burden, see Berckeley, 455 F.3d at 201, we are compelled to read his accommodation request as one for indefinite leave and, therefore, unreasonable as a matter of law.[5]  We will grant the Postal Service's motion for summary judgment on this claim.

---

[5] Even assuming *arguendo* Mastrella's request was not one for an indefinite period of leave, we would still find Mastrella's claim fails as a matter of law.  The EEOC interprets the Rehab Act to not require employers to "provide paid leave beyond that which is provided to similarly-situated employees."  See U.S. EQUAL EMP. OPPORTUNITY COMM'N, ENFORCEMENT GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP UNDER THE AMERICANS WITH DISABILITIES ACT (2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada.  *Per contra*, the EEOC advises employers "should allow an employee with a disability to exhaust accrued paid leave first and then provide unpaid leave."  See id.  The EEOC's guidelines are not controlling on courts, but they do represent "a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).  The Postal Service's policies clearly limit personal leave to short-term, unanticipated absences—not the extended daily absence Mastrella sought.  (See Doc. 62-2 ¶¶ 15, 18; White Dep. 23:19-24:6, 30:17-24; ELM § 519).  Mastrella makes no argument that Postal Service policy permits a blanket grant of personal leave nor puts forward any individuals who received a similar grant.  The Postal Service had no obligation to permit Mastrella alone among its tens of thousands of employees to use personal leave to permanently evade the requirement all salaried employees work eight hours per day.

IV.   **<u>Conclusion</u>**

For these reasons, we will grant the Postal Service's motion for summary

judgment on both of Mastrella's remaining claims.  An appropriate order will issue.


/S/ Christopher C. Conner
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     August 24, 2023